Anthony Paul FREE *v.* STATE of Arkansas

CR 86-188                                          732 S.W.2d 452

Supreme Court of Arkansas
Opinion delivered July 13, 1987

*Darrell E. Baker, Jr.,* Deputy Public Defender, and *Francis D. Crumpler, Jr.,* for appellant.

*Steve Clark,* Att'y Gen., by: *Connie C. Griffin,* Asst. Att'y Gen., for appellee.

JOHN ROBERT GRAVES, Special Justice. Certiorari was granted by this Court pursuant to Rule 29(6)(c) as a result of a tie vote in the Court of Appeals, CA CR 85-205, opinion delivered October 8, 1986.

The appellant, Anthony Paul Free, was accused of unlawfully and feloniously engaging in deviate sexual activity with a person under the age of eleven (11) and was charged with five counts of rape. The jury returned a verdict of guilty on three counts sentencing him to ten (10) years on each count with two of the charges to run consecutively for a total of twenty (20) years. The appellant argues four points for reversal.

The appellant's first point questions the voluntariness of his confession. The victim, age 9, was the nephew of the appellant, who had on occasion been entrusted with the child's care, and had for a time lived with the boy and his parents. Subsequently, the victim reported to the police that he had been raped by the appellant. In response to the reported rape, Detective Sergeant Floyd Hancock went to the appellant's residence and requested that he come to the Springdale police station to answer some questions concerning the alleged rape, but because of a job interview the appellant had previously scheduled, it was agreed that he would come to the station later that day. Upon his arrival, the appellant was properly informed of his Miranda rights, and

for approximately one hour thereafter maintained his innocence. Sergeant Hancock then related to the appellant some information which he had learned at a seminar on sexual abuse. The officer told the appellant that adult males who have a preference for young males are extremely difficult to treat, and the first step is to admit the existence of the problem. He also stated that the Court could order counseling and there might be counseling available at the penitentiary. It was shortly after this discussion that appellant confessed to having had oral sex with the victim on five separate occasions.

The appellant argues that the tactics of promise and reward of counseling used by Sergeant Hancock elicited an involuntary statement which should have been excluded. The State has the burden of proving the voluntariness of all in-custody confessions and the trial judge's decision will not be set aside unless it is against the preponderance of the evidence. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982). It is well established that in deciding whether a statement was involuntarily made, we will make an independent determination of the evidence based on the totality of the circumstances and all doubts will be resolved in favor of individual rights and safeguards. *Degler* v. *State*, 257 Ark. 388, 517 S.W.2d 515 (1974).

In *Davis* v. *State, supra,* we pointed out two factors which should be taken into consideration in examining the totality of the circumstances. First, it is necessary to look at the statements made by the interrogating officer. The appellant contends that Sergeant Hancock promised him that if he admitted he had a problem, the trial court could order counseling in lieu of a prison sentence. However, the record indicates that Sergeant Hancock never promised anything, but indicated there was only a possibility of receiving counseling if appellant admitted he had a problem.

Another way in which Sergeant Hancock's statements could render the confession involuntary is if it was calculated to deceive the appellant. The appellant argues that Sergeant Hancock's testimony indicates that his intent was to obtain a confession, and not to help the appellant get counseling. Nevertheless, we find no fault with an interrogator trying to persuade an accused to tell the truth or to answer questions, even

though there may be misrepresentations of fact made by the interrogator, so long as the means employed are not calculated to procure an untrue statement and the confession is otherwise voluntarily made. *Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978). A misrepresentation will not invalidate a confession by the defendant as long as it does not constitute an improper influence. *Rouw* v. *State*, 265 Ark. 797, 581 S.W.2d 313 (1979). In the case at bar, although Sergeant Hancock's statements may have been intended to influence the appellant, we are unable to say that it was improper or contrary to basic notions of fairness, or that it procured untrue statements.

The second factor pointed out in *Davis* v. *State, supra* is the vulnerability of the defendant. Often it is extremely difficult to determine by an officer's statement whether it is a promise of reward or leniency or merely an admonishment to tell the truth. For example, in *Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1979), we allowed a statement by an interrogating officer that "things would go easier if you told the truth", but "I'll help you any way that I can" was not allowed in *Tatum* v. *State*, 266 Ark. 506, 585 S.W.2d 957 (1979). Whether or not these statements are improper in any particular situation turns on the vulnerability of the defendant more than on the wording of the officer's statements, and in determining that vulnerability, it is proper to take into consideration such things as age of the defendant, lack of education, low intelligence, repeated or prolonged nature of questioning, and the delay between the reading of the Miranda rights and the confession. *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973); *Watson* v. *State*, 255 Ark. 631, 501 S.W.2d 609 (1973).

The appellant was 22 years old. He was permitted to come to the police station on his own accord. The record indicates that Sergeant Hancock read each of the six rights on the form to the appellant and he acknowledged that he understood them. Sergeant Hancock had him read question two aloud in order to ascertain his ability to read. He also testified that the appellant did not appear to be under the influence of alcohol or drugs at the time of the questioning. In view of the totality of the circumstances, we find the trial court was correct in admitting the confession as voluntary.

The appellant next contends that the court erred in unduly restricting the examination of a witness, Tomlinson, and of the victim concerning prior statements made by the victim. The appellant attempted to question Tomlinson about a disagreement that he had had with the victim. The prosecution objected and the Court sustained. The proffered testimony indicated that if appellant's witness had been permitted to testify, he would have said that he and the victim had had a disagreement during which the victim threatened to tell the police that Tomlinson was going to rape him.

■ Testimony regarding this issue was not relevant as to whether or not the appellant raped the victim. The appellant was attempting to introduce this testimony in an effort to show the similar circumstances surrounding the victim's report of rape by the appellant and his threat of reporting Tomlinson. Not only was this irrelevant, but it was also inadmissible character evidence under A.R.E. 404.

The proffered testimony also may not be used to impeach under Rule 608(b). This rule prohibits attacking the credibility of a witness by extrinsic evidence of specific instances of conduct other than the conviction of a crime.

■ The trial court also sustained an objection to the testimony concerning the same incident when the appellant recalled the victim to the stand after he had already given direct testimony and was cross-examined by the defense. In this instance, Rule 608(b) would normally allow questions regarding the specific incident involving the victim and Tomlinson, but the record indicates that the appellant's only purpose for questioning the victim about the incident was to lay a foundation for Tomlinson's testimony which had already been ruled inadmissible. We find no error in the trial court's ruling on appellant's true objection, and the appellant may not change his grounds on appeal. *Reed* v. *State*, 282 Ark. 492, 669 S.W.2d 192 (1984).

The appellant's third point for reversal is that the trial court erred in refusing to exclude testimony of the victim regarding other crimes, wrongs, or acts allegedly committed by the appellant. During direct examination by the prosecution the victim testified that in addition to forcing him to perform oral sex, the appellant also subjected him to anal sex. The appellant objected

to the testimony, but the court allowed it to stand.

Had this case not pertained to child abuse or incest, the evidence would have been inadmissible character evidence under Rule 404(b).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

However, we will allow such testimony to show similar acts with the same child or other children in the same household when it is helpful in showing "a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship." *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986). In *Williams* v. *State*, 103 Ark. 70, 146 S.W. 471 (1912), testimony of prior carnal abuse was allowed, not for the purpose of proving a substantive crime, but in order to show the relation and familiarity of the parties, disposition, and antecedent conduct towards one another, and to corroborate the testimony of the victim. Such evidence helps in proving the depraved sexual instinct of the accused. *Collins* v. *State*, 11 Ark. App. 282, 669 S.W.2d 505 (1984).

The appellant also argues that the testimony should have been excluded because its prejudicial effect was greater than its probative value under Rule 403. We are of the opinion that any prejudice against the appellant was outweighed by the probative value of the testimony, and the court was not in error in allowing it to stand.

Finally, the appellant contends that the trial court erred in refusing to grant a mistrial following improper questioning of the appellant by the prosecution regarding prior acts. During the prosecutor's cross-examination of the appellant, the following exchange occurred:

> Q. Have you ever had a chance for therapy before, Mr. Free?
>
> A. No.

Q. Have you ever done anything like this before?

A. No.

Q. Are you positive about that?

A. I am positive.

Q. Wasn't there a time, three years ago, when something like this happened and you had a chance to get some therapy?

A. I was accused of it yes, but . . .

The question was objected to by the appellant and sustained by the court. The trial court did not grant appellant's request for a mistrial, but instructed the jury to disregard the question by the following admonishment:

Ladies and Gentlemen, you are told to disregard in total any reference to any offer of therapy being extended in the past to this particular gentleman. That should be totally disregarded by you and not considered in any way.

In *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954), we set forth the fundamental exclusionary rule which prohibits the introduction of evidence of other offenses for the purpose of persuading the jury that the defendant is a criminal and is likely to be guilty of the crime at issue. Basically, this rule rests upon the spirit of fair play. The accused, if convicted, should be convicted by evidence of the crime with which he is charged and not by throwing into the jury box other accusations of misconduct.

The case before us is similar to the circumstances found in *Maxwell* v. *State*, 279 Ark. 423, 652 S.W.2d 31 (1983), where the appellant, who was being tried for murder, was asked the question:

Mr. Maxwell, I believe you acknowledged to Mr. Mobley that in 1968 you pled guilty and were convicted of raping an eleven-year-old girl, and received a thirty-year . . .?

The defense then objected and requested a mistrial, but the trial court refused to grant the request opting to admonish the jury to disregard the question. We reversed the conviction on grounds that the use of deliberately unfair tactics such as the

prosecutor's question warrants nothing less than a reprimand in the presence of the jury or a mistrial.

Declaring a mistrial is an exceptional remedy to be used only where any possible prejudice cannot be removed by an admonition to the jury. *Cobb* v. *State*, 265 Ark. 527, 579 S.W.2d 612 (1979). The trial court is granted a wide latitude of discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of that discretion or manifest prejudice to the complaining party. *Brown* v. *State*, 259 Ark. 464, 534 S.W.2d 207 (1976).

We do not find any evidentiary reason for permitting the question asked by the prosecutor. Even if a legitimate argument could be made for its appropriateness, we feel the danger of the unfair prejudice would absolutely require its exclusion. A.R.E. 403. We think it significant that the prosecuting attorney did not even argue that the question was proper. The prosecutor was aware that there had not been a conviction of the appellant "for something like this three years ago" and that the charges had been dropped. The question was asked appellant for no other reason than to obviously prejudice the jury. We find the admonishing statement of the trial court was not sufficient to remove the prejudicial error and the appellant's request for a mistrial should have been granted. See *Dean* v. *State*, 272 Ark. 448, 615 S.W.2d 354 (1981).

Reversed.

PURTLE, J., concurs in the result.

GLAZE, J., not participating.